Dear Mr. Bacot:
On behalf of the Greater Baton Rouge Airport District, you have requested our opinion regarding Act 1064 of the Regular Legislative Session of 1991, which enacted R.S. 2:605(D), specifically, the interpretation of various portions thereof.
R.S. 2:605(D)(1) states as follows:
§ 605. Operation and use privileges
 D. (1) Notwithstanding any other provisions of law to the contrary, fees, charges, rates, rentals, or conditions imposed on nontenant, auto rental users of each airport in this state, including but not limited to the New Orleans International Airport must be fair, reasonable, and not unjustly discriminatory. Such fees, charges, rates, rentals, or conditions may not have the effect of substantially lessening competition or tend to create a monopoly in any line of commerce, must be based upon the cost to the airport of the particular facilities or services used by such nontenant, auto rental user. No fee, charge, rate, or rental imposed upon any nontenant, auto rental user pursuant to this Subsection shall have the effect of charging such user an amount in excess of its gross revenues, as that term is defined in concession agreements with tenant concessionaires in the same industry, from customers picked up at the airport times a decimal determined by subtracting five one-hundredths from the percentage rate charged tenants pursuant to such concession agreements when that percentage rate is expressed as a decimal. (Emphasis added)
Before responding to your questions, we note the following rules of statutory construction:
Words and phrases shall be read with their context and shall be construed according to common and approved usage of language La. R.S. 1:3. In determining legislative intention as expressed in a particular statute, all of the component parts of a statute must be considered together. Washington Parish Police Jury v. Washington Parish Hospital Service District No. 1, 152 So.2d 362
(La.App. 1st Cir., 1963), writ ref., 156 So.2d 883. In construing a statute, all parts thereof should be construed together. Reynolds v. Baldwin, 1 La. Ann. 162 (1846). Meaning should be given, if possible, to every section of a statute; no portion of law should be so construed as to render another inoperative. Fisher v. Albany Machine Supply Co., 246 So.2d 218
(La.App. 1st Cir., 1971); affirmed in part, reversed in part on other grounds, 260 So.2d 961.
Your first question concerns the legislature's use of the words "based upon". Specifically, you ask:
 "Does this mean that the fee charged must be equal to the costs to the airport or does it mean simply that costs must be considered in establishing the fee?"
It is our opinion that the words "based upon", as used in the statute, mean that the fees, charges, rates and rentals (hereinafter collectively "fees") imposed on nontenant, auto rental users (hereinafter "users") must take the costs to the airport into consideration. If the legislature had intended that the fees be "equal to" the airport's costs, it could have so stated.
Furthermore, it is clear that the legislature intended airports to consider additional items when setting the fees imposed upon users. The first sentence of La. R.S. 2:605(D)(1) states that fees "must be fair, reasonable and not unjustly discriminatory". And, in addition to being based upon costs, the fees: 1) "may not have the effect of substantially lessening competition", and 2) "may not. . . tend to create a monopoly in any line of commerce". If the words "based upon" are given the meaning "equal to" then the other parts of the statute, requiring consideration of fairness, discriminatory effects, monopolization and competition, would be rendered inoperative and of no effect.
Your second question regards use of the word "particular" in the sentence which states, in pertinent part, ". . . fees . . . must be based upon the cost to the airport of the particular facilities or services used by such nontenant, auto rental user". Specifically, you ask:
 ". . . should the act be interpreted so as to calculate `costs' based only on road usage, parking space, etc., i.e. specific areas of the Airport where the off site car rental companies operate, or, rather . . . did the legislature intend that the `costs' be determined using a number derived by taking into account all costs of operations of the Airport and thereafter ascribing a percentage of those costs based on the particular use of the rental user?"
It is our opinion that the legislature's use of "particular" signifies that the costs must be based upon the specific areas of the airport where off-site rental car companies operate. In common and ordinary usage, the word "particular" is used to distinguish a thing from others of the same general category. In this statute, the legislature intended that setting the fees charged users, the airports must consider the actual facilities or services utilized by users. In our opinion, off-site rental car companies should not be charged for areas such as the runway, or the areas in the terminal which are utilized exclusively by on-site tenants. Their customers clearly utilize the common areas of the terminal and the common services provided therein such as electricity, water and security. The off-site car companies also utilize the airport access roads. Accepted accounting procedures for municipal corporations should be utilized to allocate costs and determine the user's usage of these particular facilities.
Your third question involves the cap placed upon the fees which airports can charge users and the formula provided to determine the cap. You enclosed copies of portions of the Airport District's concession agreements with four on-site rental car tenants. Specifically, you enclosed pages 6-2 through 6-6 of each. A copy of one of those contract portions is attached hereto. We note that these contracts contain a method for determining gross revenues.
Your correspondence states:
 (3) The act provides that no fee may be charged off-site tenants which is greater than a decimal determined by subtracting 5/100ths from the percentage rate charged to on-site tenants pursuant to such concession agreements when "that percentage rate is expressed as a decimal." In other words, the off-site parking company would never be charged a fee which would exceed that fee charged on-site parking companies less 5%, when the on-site parking companies are charged on a rate expressed as a decimal. Our question is, (and I have attached copies of the relevant portions of our concession agreements) do the contracts with the Greater Baton Rouge Airport express the fee as a decimal? You will note that our concession agreements contain a minimum guarantee balanced against a decimal and in addition certain rental fees. Some of our car rental companies have never had gross revenues sufficient to pay the 10% fee but have always had to pay the minimum guarantee."
As we interpret your correspondence, the Airport interprets the statute as imposing a cap when on-site parking companies are charged a rate expressed as a decimal. We disagree.
The statute states that the fee charged users shall not exceed an amount determined "by subtracting five one hundredths from the percentage rate charged [concessionaire tenants] when that percentage rate is expressed as a decimal."
It is our opinion that the statute provides for a mathematical formula which first requires a determination of the percentage rate of gross revenues (as defined in said agreements) charged on site tenant concessionaires by the Airport. Assuming that rate to be 25% of their gross revenues, the next step is to convert that percentage to a decimal, i.e., .25. Then, five one-hundredths (or .05) must be subtracted from that decimal (.25). The resulting decimal, (.20), must be multiplied by the user's "gross revenues . . . from customers picked up at the airport". As such, if an off-site user's gross revenues from customers picked up at the airport is $250,000.00, then the fee charged that user could not exceed $50,000.00.
We note that the Baton Rouge Airport's concessionaire tenants pay the greater of 10% of gross revenues or a stated minimum annual fee, in addition to certain rental fees. For any given year, however, a determination of the percentage of their gross revenues paid to the airport is determinable.
Trusting this adequately responds to your request, I remain,
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jv